### WILTSIE *v.* WILTSIE'S EX'R.

*(Supreme Court, General Term, Fifth Department.  June 23, 1888.)*

1. PAYMENT—PRESUMPTION—REBUTTAL—SATISFACTION OF MORTGAGE.
    Deceased being, in his life-time, engaged in loaning money, with his wife's consent controlled her funds, received the purchase money for her land, loaned it on mortgages, and received payments thereon, of which mortgages she afterwards acknowledged satisfaction. He frequently admitted his liability for the money, stating that it was better that he should handle the money, and that he could pay her whenever she wished it, stating to a witness who was appointed executor under his will that he (witness) knew the facts, and that he should see that his wife got her money. *Held* sufficient evidence to rebut any presumption of repayment arising from the acknowledgment of satisfaction of the mortgages, and to sustain the surrogate's allowance against his estate for the amounts so received.

2. WITNESS—COMPETENCY—TRANSACTIONS WITH DECEDENTS.
    Code Civil Proc. N. Y. § 829, providing that one interested, or one through whom one interested in the event of a suit derives title, shall not be competent to testify as to any conversations or personal transactions with a deceased party, against the executor, etc., of deceased, does not prevent an executor from testifying as to such conversation with his testator on behalf of the wife of deceased, claiming a debt against the estate.

Appeal from surrogate's court, Cattaraugus county.

Appeal by the executor of James Wiltsie, deceased, from a decree of the surrogate's court of Cattaraugus county, allowing the claim of Malvina Wiltsie against the estate of said decedent.

Argued before HAIGHT, BRADLEY, and DWIGHT, JJ.

*Corbin & Yates,* for appellant.  *Frank Rumsey,* for respondent.

HAIGHT, J.  Malvina Wiltsie, the claimant, was the wife of James Wiltsie. She was the owner of a farm in Cattaraugus county, which she sold to one Leonard Sprague the 1st day of April, 1868, for the sum of four thousand four hundred dollars. One thousand dollars of the purchase price was paid

to her husband, James Wiltsie, at the time of the delivery of the deed, and was by him loaned to one Nathan A. Die on the 4th day of April thereafter; and Die executed and delivered to him a mortgage upon real estate to secure the repayment of such sum. The balance of the purchase price, $3,400, was secured to the claimant by a mortgage upon the farm so sold by her to Sprague. Payments were made upon this mortgage, from time to time, of principal and interest, to her husband, James Wiltsie. Subsequently the farm was divided by Sprague, and sold to other persons, and three other mortgages were executed and delivered to her, amounting in the aggregate to the balance unpaid upon the Sprague mortgage, which was by her satisfied and discharged of record. Payments were also made, from time to time, upon these other mortgages, of interest and principal, to her husband; and, when the mortgages were paid in full, she executed satisfaction thereof. After the death of James Wiltsie, she presented the claim in controversy against his estate, which has been audited and allowed by the decree appealed from.

Inasmuch as no question is made in reference to the credits allowed by the surrogate, there is only one question which we consider it necessary to discuss upon this appeal. Upon the hearing before the surrogate, Erastus Willard, one of the executors, was sworn as a witness in behalf of the claimant, and testified to conversations that he had had with the deceased in his lifetime. Willard was not interested in the claim, and his testimony was not incompetent, within the provision of section 829 of the Code of Civil Procedure. The surrogate, in his findings, charges the deceased with the $1,000, part of the purchase price paid to him in cash, and by him loaned to Nathan A. Die, with the interest thereon to the date of the decree. He also charges him with the payments of principal and interest made from time to time upon the mortgages, with interest from the time that such payments were made to him. It is contended, on the part of the appellant, that the fact that the claimant subsequently executed satisfaction of each of these mortgages, raised a presumption that she had received the money thereon, and that her claim ought not to have been allowed against the estate of the deceased. It is undoubtedly true that the executing of the satisfaction of these mortgages raised such a presumption, and the question is whether the evidence establishes facts which overcome it. The fact that the payments were made to the husband was established from his own receipts and indorsements upon the mortgages, and the testimony of the mortgagors who made the payments. Willard, in his testimony, states that he had conversations with Wiltsie at different times about the Sprague mortgage, and that Wiltsie said to him that he thought the best way would be for him to handle the money for his wife; that he would make over to her mortgages when she wanted it done; that he said he and his wife had talked the matter over, and that it was satisfactory to her to have this done; he said it made no difference in whose name the mortgage was taken; that he would pay her when she demanded; that he would account to her for the principal and interest, and what he could make over and above he should have; that, two or three years ago, he had another conversation with him at a time when witness was sick. The witness stated to him that he had better have another executor appointed, as he might not recover, and wanted matters made right as to what he owed his wife; that Wiltsie then said he would wait, and see the result; and, if witness recovered, he understood the case, and there would be no difficulty but that his wife would get what was her due; but, if the witness did not recover, he would arrange it in some shape so that she would get her pay; that Mr. Wiltsie's principal business, for many years, had been the loaning of money, the buying of notes and mortgages, and getting a bonus thereon. This evidence tends to indicate that there was an arrangement between the claimant and her husband by which he was permitted to handle her money, and invest it on his own account; he to account to her for the principal and interest. The fact that he received the

money is undisputed, and no evidence is submitted showing other payments. to her by him than those disclosed in the findings of the surrogate. We are of the opinion that the evidence is sufficient to sustain the finding. There does not appear to be any error in the mode in which the interest was computed; and we see no reason why the decree of the surrogate should not be affirmed, with costs of this appeal payable out of the estate. So ordered.

BRADLEY and DWIGHT, JJ., concur.